MAIN *vs.* KING.

Where a penalty is inserted in contracts for the future delivery of merchandise, it is intended as a limit, and the amount which is to be paid in case of default, unless the face of the contract clearly shows a different intention.
Thus, where M. agreed to deliver to K., at a future day, a quantity of eggs, and K. agreed to receive the same and pay a stipulated price therefor, under the forfeiture of M. paying K. $50 if the eggs were not delivered; and in case K. should refuse to receive the eggs, then K. was to pay M. $50 on demand; *Held*, that in an action by M. to recover damages for the refusal of K. to receive and pay for the eggs, he could only recover the $50 mentioned in the contract.

THIS case came up on a bill of exceptions to the decision of the circuit judge, the jury having found a verdict of $446,33 for the plaintiff.

On the 16th of Dec. 1844, the plaintiff and defendant subscribed an agreement, whereby it was agreed that Main should deliver to King, on the 15th of January, 1845, and King should receive 100 barrels of fresh eggs, to be looked over and made good, at 9 eggs for one shilling.   Then followed these words— " Under the forfeiture of Thomas Main, paying said King $50 if the eggs are not delivered as above agreed; and, if in case said King refuses to receive the eggs as above agreed, then King is to pay said Main $50 on demand."

The plaintiff proved his offer to deliver the eggs, and that they were not, on the 15th of January, 1845, worth so much as the contract price, by the amount found by the jury.   The defendant requested the judge to charge the jury, that the plaintiffs recovery must be limited under the agreement to the $50 mentioned in the agreement, but the judge refused so to charge.

*Wightman & Clark*, for the plaintiff.

*Walker & Nash*, for the defendant.

Main *v.* King.

*By the Court,* MITCHELL, J.   The ancient notion of the law was, that a penalty was always the limit of the recovery; and that, accordingly, on a bond, the penalty was the limit, whatever might be the condition of the bond.   The same rule still prevails where the obligor is a surety; but it *may* be that in cases where the face of the bond shows that the defendant owes on his own account, a debt certain in amount at the time of entering into the obligation; and that according to the condition of the bond the amount actually due was justly due, and to exceed the penalty, the whole amount may be recovered, though exceeding the penalty.   This is on the principle now so freely administered in courts, that the intention of parties is to be followed, when that is clearly manifested; and that when a certain sum of money is admitted to be due, and there is an obligation given to pay it, with interest, the intention of both parties must be that the whole principal and the whole interest shall be paid, and that the penalty is a matter of form merely.   So, on the other hand, when in the agreement a sum is fixed as liquidated damages, and *so expressed,* and from the nature of the damages it would be difficult, if not impossible, to have two or more minds agree as to the amount of actual damage—as where one sells out the good will of a business and agrees not to enter into it again for a limited time.   There it is natural to infer that the parties, knowing the difficulty of ascertaining the damages, have determined not to leave the matter in uncertainty, and therefore have settled the amount themselves.   ( *Williams* v. *Dakin,* 22 *Wend.* 20.)   In both cases the intent of the parties is followed.

In all cases of contracts to deliver merchandise at a future day, there is risk of a change in the market, such as might make the transaction nearly a total loss to one party, and an unconscionable profit to the other; not as all such should be, a dealing beneficial to both.   Prudent men should be at liberty to avoid such extreme risks, and the law should encourage them in doing so; so that the character of their business should be as far as possible from that of gamblers on chances.   And when there is any reason to believe, from the face of the contract, that the parties have been actuated by this prudent caution, it is best for

Main *v.* King.

all that they should have the benefit both of their foresight and of their moderation. It would therefore be a safe rule, in all cases of contracts to be executed at a future day, to consider the sum named as damages for non-performance as the limit of the recovery, whether that sum be called liquidated damages or a penalty.

There must be some motive in fixing the sum. If it is so large that it will be seen at once that it will far exceed the actual damage, then it will be admitted that it was inserted as a penalty only, and will still have the effect of a limit; and then it may be said to be minatory only. But if the amount is small, compared with the amount contracted for, it could not have been intended to be minatory, and that the only motive for it could be to have it as liquidated damages, or as a limit to the amount to be paid. In some cases even these moderate penalties would far exceed the actual damages, so that the fair inference, even in those cases, is that the parties intended the amount as a limit and not as a liquidation of the damages, unless there be something clearly to show a contrary intent.

In this case the agreement is express, that King is to pay $50 on demand, if he refuses to receive the eggs. That would seem to show a clear intent to limit the damages to that sum. But the plaintiff contends that in the case of his own default it is expressed that he, the plaintiff, is to be under the forfeiture of paying $50 if the eggs are not delivered; and that as, by the agreement, what he was to pay was declared to be a forfeiture, and so minatory only, it must be that the same thing was intended as to the defendant. But this does not follow. If the parties, by their language, show that the seller was to be under the law of penalties, and then change their phraseology as to the buyer, using different language as to his liability, and which, standing alone, would clearly limit his liability, it may be inferred that the language was changed, that the difference of effect might be produced. Or, the buyer may well insist that the language is clear as to the extent of his liability, and therefore not to be affected by the more uncertain language as to the seller's liability.

In this case it is by no means clear that the language does not indicate that the plaintiff, in case of failure, was to pay $50 as liquidated damages. It is "under the forfeiture of paying $50 if the eggs are not delivered as above agreed." If it were under the liability to pay $50 if the eggs were not delivered, it would probably be a liquidation of the damages, as it is not essential that the words "liquidated damages" should be used. So the introduction of the word "penalty" or "forfeiture" will not necessarily control the meaning of the words. Thus, if the expression had been "under the forfeiture of paying $50 as the damages agreed on, if the eggs are not delivered," the word "forfeiture" would entirely lose its effect by the context; so it may also in this case, by the intent of the parties, to be inferred from the whole agreement, and from the motives which would naturally influence men of business in such transactions.

We are, however, disposed to adopt the broad rule, that where a penalty is inserted in contracts for the future delivery of merchandise, it is intended as a limit, and the amount to be paid in case of default; unless the face of the contract clearly shows a different intention.

New trial granted; costs to abide the event.

